**R. E. D. M. CORPORATION, Plaintiff,**

v.

**Joseph LO SECCO, Contracting Officer, Department of the Army, United States Government, Defendant.**

**Civ. 603.**

United States District Court
S. D. New York.

Sept. 27, 1968.

See also D.C., 44 F.R.D. 356.

Joy & Hallinan, New York City, for plaintiff.

Robert M. Morgenthau, U. S. Atty. Southern Dist. of New York, for defendant by David Paget, Asst. U. S. Atty.

## OPINION

BONSAL, District Judge.

Plaintiff R.E.D.M. Corporation (plaintiff) has instituted this action, pursuant to 28 U.S.C. § 1361, to obtain a writ of mandamus to compel the defendant Joseph Lo Secco, a Contracting Officer, Department of the Army, (defendant) to make detailed findings of fact to supplement a written decision which he made on January 19, 1968. Plaintiff moves, pursuant to Rule 56, F.R.Civ.P., for summary judgment on the ground that there is no genuine issue as to any material fact. Defendant moves, pursuant to Rule 56, F.R.Civ.P., for summary judgment dismissing the complaint on the ground that mandamus will not lie; and moves, pursuant to Rule 12(b) (1), F.R. Civ.P., to dismiss the complaint on the ground that the court lacks subject matter jurisdiction over the action because of plaintiff's failure to exhaust administrative remedies.

From the affidavits submitted by both parties in support of their motions, the following facts appear to be without dispute:

On October 25, 1961, plaintiff, responding to a public invitation for bids from the Ordnance Ammunition Command of the United States Army (Ordnance Command), submitted a bid for the production and delivery of 1,270,000 complete head assemblies, or timing mechanisms, for M525 and M527 B1 Point Detonator Fuzes. On November 29, 1961, plaintiff was awarded Government Contract No. DA–11–173–ORD–651 (the Contract) for the production and delivery of the head assemblies, at a unit price of $1.543 each, for a total Contract price of $1,959,610.00.

Plaintiff began construction of the head assemblies but soon encountered problems because of arming failures in the units. In April 1962, plaintiff referred his problems to the Industrial Engineering Division of Picatinny Arsenal (the Arsenal), which had custody of the technical data for the production of the head assemblies. On July 26, 1962, plaintiff discussed his problems with representatives of the Arsenal, the Ordnance Command, and the New York Ordnance District (the District).

In early October 1962, plaintiff submitted to the District an engineering report of the problem of arming failures, together with three Technical Data Changes Requests (TDCRs). On October 10, 1962, after discussions with representatives of the District, now known as the New York Procurement District (Procurement District), the three TDCRs

were rejected; on February 20, 1963, one TDCR, resubmitted by plaintiff in January 1963, was again rejected.

On May 20 and June 4, 1963, plaintiff's attorney requested, pursuant to Section 2[1] of the Contract, that the Contracting Officer of the Procurement District approve an upward equitable adjustment of the Contract price, because of increased costs attributable to the arming failures.

In a letter dated October 4, 1963, plaintiff's attorney "formally requested that the Contracting Officer make findings of fact and render a final decision in writing concerning the dispute described in the [letter of June 4, 1963] * * * on or before November 4, 1963." This request was made pursuant to Section 12 of the Contract, the "Disputes" clause, discussed more fully below.

In a letter dated October 23, 1963, the Contracting Officer stated that "it is impossible * * * to reach a decision in this matter on or before 4 November 1963 * * * [because] each claim must be given careful consideration * * * and involves a substantial undertaking."

Further meetings between plaintiff and representatives of the Procurement District were held from 1963 through 1966. According to the affidavit of Kahn, plaintiff's Vice-President, plaintiff was told in March 1966 that its claim was being held in abeyance pending the decision by the Armed Services Board of Contract Appeals (ASBCA) in an appeal on a similar claim by the Wilkinson Manufacturing Corporation (Wilkinson), which decision was rendered in February 1967. Later in 1967, the De-

---

1. "2. Changes
 The Contracting Officer may at any time, by a written order, and without notice to the sureties, make changes, within the general scope of this contract, in any one or more of the following: (1) Drawings, designs, or specifications * * * If any such change causes an increase or decrease in the cost of * * * the performance of * * * this contract, * * * an equitable adjustment shall be made in the contract price * * * Any claim by the Con-

tractor for adjustment under this clause must be asserted within 30 days from the date of receipt by the Contractor of the notification of change: *Provided, however*, That the Contracting Officer, if he decides that the facts justify such action, may receive and act upon any such claim asserted at any time prior to final payment under this contract * * * Failure to agree to any adjustment shall be a dispute concerning a question of fact within the meaning of the clause of this contract entitled 'Disputes.' "

partment of the Army requested and made an audit of plaintiff's books and records.

On January 3 and 5, 1968, plaintiff's representatives attended negotiating conferences with representatives of the Procurement District. Sometime between 1963 and January 1968, defendant became the Contracting Officer charged with determining plaintiff's claim.

On January 19, 1968, the defendant mailed his decision on the plaintiff's claim to plaintiff. In his letter, he stated in part that:

"After consideration of the facts and circumstances substantiating your claim I hereby find that:

1. The drawings and specifications set forth as part of Contract No. DA–11–173–ORD–651 were not inadequate or defective, as claimed by you.

2. Said drawings and specifications were adequate to permit you to manufacture the supplies as called for by the contract.

3. The increased costs alleged to have been incurred by you did not result from what you alleged were inadequacies or defeats in the contract drawings and specifications.

I hereby declare that your claim * * * is denied."

In his motion for summary judgment, plaintiff contends that the defendant violated his contractual duty to render detailed findings of fact and to inform plaintiff of the basis for his decision; and that a writ of mandamus, pursuant to 28 U.S.C. § 1361, should issue to the defendant directing him to comply with his duty.

In his motion for summary judgment, defendant contends that there is no mandatory duty to render detailed findings of fact and that mandamus will not lie to compel the performance of a discretionary act. However, in his motion to dismiss, defendant contends that the two motions for summary judgment are irrelevant, since the court has no jurisdiction over the subject matter of this action because of plaintiff's failure to exhaust his administrative remedies.

For reasons stated, the plaintiff's motion for summary judgment is denied; defendant's motion for summary judgment is denied; and defendant's motion to dismiss is granted.

In support of his motion to dismiss, defendant contends that Section 12 of the Contract, the "Disputes" clause, provides that any appeal from an adverse decision by the Contracting Officer be made to the Secretary of the Army or his "duly authorized representative," the ASBCA, and that this is an exclusive and completely adequate procedure for appeals.

The "Disputes" clause provides that:

"(a) Except as otherwise provided in this contract, any dispute concerning a question of fact arising under this contract which is not disposed of by agreement shall be decided by the Contracting Officer, who shall reduce his decision to writing and mail or otherwise furnish a copy thereof to the Contractor. The decision of the Contracting Officer shall be final and conclusive unless, within 30 days from the date of receipt of such copy, the Contractor mails or otherwise furnishes to the Contracting Officer a written appeal addressed to the Secretary. The decision of the Secretary or his duly authorized representative for the determination of such appeals shall be final and conclusive unless determined by a court of competent jurisdiction to have been fraudulent, or capricious, or arbitrary, or so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence. In connection with any appeal proceeding under this clause, the Contractor shall be afforded an opportunity to be heard and to offer evidence in support of its appeal. Pending final decision of a dispute hereunder, the Contractor shall proceed diligently with the performance of the contract and in accordance with the Contracting Officer's decision.

"(b) This 'Disputes' clause does not preclude consideration of law questions in connection with decisions provided for in paragraph (a) above: *Provided, That* nothing in this contract shall be construed as making final the decision * * * on a question of law."

The defendant contends that the proceeding before the ASBCA is *de novo* and that no presumption of correctness attaches to the finding of the Contracting Officer; and that the plaintiff must first exhaust these remedies before challenging the finding of the ASBCA in a "court of competent jurisdiction." The defendant points out that, by a letter dated February 20, 1968, the plaintiff has already lodged a written notice of appeal from the defendant's decision with the Secretary of the Army, as required by the "Disputes" clause.

On the other hand, the plaintiff contends that it is not required to exhaust administrative remedies because the "Disputes" clause remedy is contractual and not administrative; and that defendant's breach of the Contract entitles plaintiff to a judicial, and not administrative, remedy. Further, the plaintiff contends that, aside from an appeal to the ASBCA, there are several remedies open to it, viz., suit in the Court of Claims under the Tucker Act, 28 U.S.C. § 1346, the Declaratory Judgment Act, 28 U.S.C. § 2201, or under the theory that the defendant delayed too long in his decision; or an application to the Comptroller General of the United States; and that the "Disputes" clause does not provide an exclusive procedure.

■ However, it is well settled that the "Disputes" clause of the Contract, a requisite of Government fixed-price supply contracts, 32 CFR §§ 7.101, 7.103–12, does provide the exclusive remedy of appeal for a contractor, like plaintiff, from an adverse decision by the Contracting Officer, Crown Coat Front Company v. United States, 386 U.S. 503, 511–512, 87 S.Ct. 1177, 1182, 18 L.Ed.2d 256 (1967); United States v. Joseph A. Holpuch Company, 328 U.S. 234, 239–240, 66 S.Ct. 1000, 90 L.Ed. 1192 (1946). By signing the Contract,

"the contractor has agreed in effect to convert what otherwise might be claims for breach of contract into claims for equitable adjustment. * * * The contractor must present his claim to the contracting officer, whose decision is final unless appealed for final action by * * * the Armed Services Board of Contract Appeals. *Until that Board has acted, the contractor's claim is not subject to adjudication in the courts. * * * It is now crystal clear that the contractor must seek the relief provided for under the contract or be barred from any relief in the courts.*" (Emphasis added.) (Crown Coat Front Co. v. United States, ibid.)

■■ The only exception to this rule is where the administrative remedy, here application to the ASBCA, is inadequate or unavailable, United States v. Joseph A. Holpuch Co., ibid. However, the remedy which the ASBCA could provide to plaintiff is available and adequate. Since the proceeding before the ASBCA is *de novo*, Shedd, Disputes and Appeals: The Armed Services Board of Contract Appeals, 29 Law & Contemp. Prob. 39, 69–71 (1964), the findings of the Contracting Officer cease to be relevant and the ASBCA can make any decision the Contracting Officer might make, Utility Trailer Sales Co. of San Francisco, 58–2 BCA ¶ 1948 (ASBCA 1958), may consider the merits of the claim and remand to the Contracting Officer for further proceedings and findings, Marinell & Campbell, Inc., 61–1 BCA ¶ 2935 (ASBCA 1961); Leader Mfg. Co., 58–2 BCA ¶ 1877 (ASBCA 1958); Consolidated Diesel Elec. Corp., 57–2 BCA ¶ 1146 (ASBCA 1957), and may consider evidence on the merits not presented to the Contracting Officer and, on the basis of such evidence, sustain the appeal of the Contractor, Donald Grove Company, 57–1 BCA ¶ 1282 (ASBCA 1957).

■ Plaintiff contends that there are questions of law involved in its claim

and that under the Declaratory Judgment and Tucker Acts, supra, it may bring an action in the District Court without first proceeding through the ASBCA. However, even without deciding whether there is a question of law involved in plaintiff's claim, it is clear that "although the Disputes clause covers 'questions of fact', the boards of contract appeals have almost always considered questions of law. * * * Since many claims involve mixed questions of law and fact, a complete hearing before the board * * * will tend to improve the quality of the record upon which it has to act * * *." Morrison-Knudsen Company v. United States, 345 F.2d 833, 837, 170 Ct.Cl. 757 (1965); see 32 CFR § 30.1 (Part I, Section 5).

 Furthermore, under the Tucker Act, the District Court has jurisdiction only over claims against the United States, not exceeding $10,000, and may grant equitable relief only when such relief is incidental to a claim for money damages. Universal Transistor Products Corp. v. United States, 214 F.Supp. 486, 487, n. 1 (E.D.N.Y.1963). Plaintiff makes no claim for money damages here. Under the Declaratory Judgment Act, the District Court has jurisdiction only where a basis for jurisdiction already exists, Zito v. Tesoriero, 239 F.Supp. 354 (E.D.N.Y.1965). In this action, no other basis for jurisdiction exists.

 The plaintiff argues that there is no need to exhaust administrative remedies where, as here, the defendant unreasonably delayed his decision on plaintiff's claim. Although the record reveals no reason why the defendant waited so long to render a decision on plaintiff's claim, the cases which plaintiff cites do not support the proposition he urges. In New York Shipbuilding Corp. v. United States, 385 F.2d 427, 180 Ct.Cl. 446 (1967), the contractor filed his suit in the Court of Claims before any decision was rendered by the Contracting Officer, thereby by-passing the intermediary steps of awaiting the decision of the Contracting Officer and appealing to the ASBCA. The Court of Claims stated that "Where the administrative remedy has proved to be unavailable or inadequate—including cases, like this, in which *a proper determination has been unduly delayed and suit has been begun here before any lawful decision*—the court's practice has long been to try the case judicially," supra at 437. (Emphasis added.)

Plaintiff presents nothing to suggest that the ASBCA will unduly delay his appeal *de novo;* of course, if the ASBCA did delay, the plaintiff would be free to bring an action in the Court of Claims, as in *New York Shipbuilding Corporation.*

 Since the court has no jurisdiction over the subject matter because of plaintiff's failure to exhaust administrative remedies, the defendant's motion to dismiss, pursuant to Rule 12(b)(1), F.R.Civ.P., is granted; the motions by plaintiff and defendant for summary judgment, pursuant to Rule 56, F.R.Civ.P., are denied.[2]

It is so ordered.

2. Mandamus would not lie even if the court had jurisdiction since the defendant had no duty to make detailed findings of fact, see Newport News Shipbuilding & Dry Dock Co. v. United States, 374 F.2d 516, 530, 179 Ct.Cl. 97 (1967); 32 C.F.R. § 1.314(b). Section 1361 of the Mandamus and Venue Act of 1962 (28 U.S.C. § 1361) did not extend pre-existing law that mandamus will not lie to compel an official to perform a discretionary act, Parker v. Kennedy, 212 F.Supp. 594 (S.D. N.Y.1963); see Byse and Fiocca, Section 1361 of the Mandamus and Venue Act of 1962 and 'Nonstatutory' Judicial Review of Federal Administrative Action, 81 Harv.L.Rev. 308, 348–349 (1967).