Plaintiffs C. J. Dugan and Otero Mills, Inc. bring this action against the United States Government alleging breach of a contract. Defendant moved for summary judgment stating that because plaintiffs do not have a contract with the government, this court is without jurisdiction to hear the case. Plaintiffs thereupon alternatively moved to transfer the case to the proper district court, should we determine we are without jurisdiction. Because we find plaintiffs have neither an express nor an implied contract with the government, plaintiffs do not meet the jurisdictional requirements of the Tucker Act, 28 U.S.C. § 1491, and therefore Congress has not consented to this suit. Also, because plaintiffs failed to follow the required statutory procedure for a tort claim, the case cannot be transferred. For the following reasons the court dismisses plaintiffs’ petition for want of jurisdiction and denies plaintiffs* motion to transfer.
On May 25, 1965, C. J. Dugan purchased from the Apache Tribe of the Mescalero Indian Reservation all merchantable timber as designated for cutting by the Bureau of Indian Affiars (BIA), on the South Block Logging Unit of the Mescalero Indian Reservation. The contract stated that "[t]he parties to this contract are the Apache Tribe of the *614 Mescalero Reservation hereinafter called the Seller, as represented by the duly authorized representatives and C. J. Dugan * * *.” Dugan and the president and secretary of the tribe signed the contract. The Secretary of the Interior approved the contract under authority of Section 7 of the Act of June 25, 1910, as amended, 25 U.S.C. §§ 407, 466 (Act).
The contract originally provided that Dugan could purchase and cut all designated timber on or before December 31, 1975, but it was extended for another 5 years. The BIA was responsible for designating the timber to be cut, setting the price, adjusting stumpage rates and accepting all payments made for cut timber. The government also received 15 percent of all proceeds paid by Dugan under the contract. Dugan claims that he assigned this contract to plaintiff Otero Mills, Inc. We need not decide the validity of the assignment because of our holdings on jurisdiction and transfer.
Plaintiffs say that the government has refused to make equitable adjustments in the stumpage rates contrary to contract obligations. They further allege that the government changed its requirements concerning slash disposal and road building, thereby directly increasing plaintiffs’ production costs by 900 percent and that the government has refused to allow a corresponding adjustment in stump-age rates. To establish jurisdiction, plaintiffs argue that the government became a party to the contract between Dugan and the Apache Tribe because the government approved the contract and agreed to perform certain acts and undertake certain responsibilities.
The Supreme Court, however, has held that the United States is not a party to a contract for the sale of timber on unallotted land of an Indian reservation when it exercises authority pursuant to the Act. United States v. Algoma Lumber Co., 305 U.S. 415 (1939). The contract is between the Indian tribe and the timber company. Because the government has plenary power to take proper measures to protect Indian property, exercise of that power does not necessarily involve the assumption of any contractual obligations by the government. Id., at 421-22. An assumption of contractual obligations "is not to be presumed in the *615 absence of any action taken by the government or on its behalf indicating such a purpose. * * *." Id.
Plaintiffs have not demonstrated any action taken by the government or on its behalf indicating it assumed contractual obligations. In fact, this case is indistinguishable from Algoma. In Algoma, as in this case, the government received a percentage fee of the sale proceeds for expenses. This fee does not in theory provide an economic benefit to the government under the contract. Such fees are used to defray the expenses of administering the contracts of sale and Indian forests and are charged pursuant to statutory authority. 25 U.S.C. §§ 407, 413, 466. Additionally, the contract approval by the Secretary of the Interior does not create a contract with the government, as the Secretary is exercising authority under a statute designed for the protection of the Indians. See id at §§ 405, 407.
Plaintiffs, however, contend Algoma is no longer controlling, because Priv. L. Nos. 1088, 1089, passed by Congress in 1952, authorized this court to hear Algoma Lumber Company’s claims notwithstanding any jurisdictional limitations. Plaintiffs, however, misconstrue the role that a private law plays in this court’s exercise of jurisdiction. Because the government was not a party to the contract in Algoma, there was no jurisdiction. The private bills were special and limited jurisdictional laws that authorized this court to hear the claims of plaintiffs in that case. Private bills are applicable only to the specific parties named in the bill. Without such specific authorization in the form of their own private bill, plaintiffs are bound by the original decision of Algoma which held that the government is not a party to the contract.
Plaintiffs next argue that this court should transfer the case to the United States District Court for the District of New Mexico pursuant to 28 U.S.C. § 1506. Section 1506 provides—
§ 1506. Transfer to curé defect of jurisdiction
If a case within the exclusive jurisdiction of the district courts is filed in the Court of Claims, the Court of Claims shall, if it be in the interest of justice, transfer such case to any district court in which it could have been brought at the time such case was filed, where the case shall *616 proceed as if it had been filed in the district court on the date it was filed in the Court of Claims.
Under § 1506, this court will transfer a case to a district court upon our determination that the case is within the exclusive jurisdiction of the district court and that such a transfer serves the interest of justice. Appalachian Regional Hospitals, Inc. v. United States, 217 Ct.Cl. 1, 576 F.2d 858 (1978). While we should not, before making a transfer, decide the issues that are for the putative district court to decide for itself, we must at least ask whether a plaintiff has a reasonable chance of persuading the district court that it has jurisdiction. Plaintiffs contend their claim sounds in tort, establishing jurisdiction in the district court pursuant to 28 U.S.C. § 1346(b), and a transfer would serve the interests of justice because of statute of limitation concerns.
The government responds by characterizing plaintiffs’ claim as one for misrepresentation — a claim to which the government has not waived sovereign immunity. 28 U.S.C. § 2680(h). The government also argues that 28 U.S.C. § 2675 bars plaintiffs’ claim. Because we agree with the government that section 2675 acts as a jurisdictional bar, we need not determine any of the other arguments raised concerning the transfer motion.
Section 2675 provides—
§ 2675. Disposition by federal agency as prerequisite; evidence.
(a) An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail. The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section. The provisions of this subsection shall not apply to such claims as may be asserted under the Federal Rules of *617 Civil Procedure by third party complaint, cross claim, or counterclaim.
The requirement that a claimant file first with the agency is jurisdictional. E.g., Employees Welfare Committee v. Daws, 599 F.2d 1375 (5th Cir. 1979); DSI Corp. v. Secretary of HUD, 594 F.2d 177 (9th Cir. 1979). In the instant case, put on notice that defendant denied plaintiffs had ever filed the claim this statute requires, plaintiffs have exhibited in support of their motion letters they say were claims addressed to the BIA and to members of Congress.
These letters complain bitterly about millions of dollars loss caused to plaintiffs by mismanagement and by arbitrary rulings of the BIA. However, they were on their respective faces written either to support a claim or claims for settlement or equitable adjustment under the contract, or else, after such claim or claims had been denied, to obtain reopening of them, or simply to let off steam. There is nothing in them to suggest that the writer had in mind a claim under the Tort Claims Act. A recipient would naturally have supposed that an adjustment in the stump-age prices payable for the timber would be the appropriate means of satisfying the claimants, should the agency decide to do so. There are prescribed forms for submission of Tort Claims Act claims for administrative settlement and what authority there is suggests that one who does not use the forms must supply at least all the information they call for. See Mudlo v. United States, 423 F.Supp. 1373 (W.D. Pa. 1976). Since the statute envisions a scheme whereby potential plaintiffs first file a claim for a sum certain with an agency indicating the facts upon which recovery is requested, and since plaintiffs failed to comply with the statutory requirement, the district court would be prevented from exercising jurisdiction over this case. Employees Welfare Committee v. Daws, supra; 28 U.S.C. § 2675.
Therefore, for the foregoing reasons the defendant’s motion for summary judgment is granted, plaintiffs’ motion to transfer is denied, and plaintiffs’ petition is dismissed.